**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JANE DOE,

              Plaintiff,                    Case Number: 2:09-cv-13138-PDB-PJK

v.                                    Paul D. Borman
                                    United States District Judge

ERIK PETERSON and LEE
PETERSON, individually and
d/b/a AMERICAN DIGICOM,         Paul J. Komives
                                    United States Magistrate Judge

              Defendants,

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      This case comes before the Court on Defendants' motion for summary judgment. (Dkt. No. 59.) Plaintiff has filed a response.[1] (Dkt. No. 63.) Defendants have not filed a reply. Oral arguments were heard on Monday, February 28, 2011 at 2:00 p.m. For the following reasons, the Court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's invasion of privacy claims – intrusion upon seclusion and public disclosure of private facts – but otherwise DENIES the motion because Plaintiff has standing to bring a civil suit against Defendants under 18 U.S.C. 2252(f), and genuine issues of material fact exist regarding whether Defendant Erik Peterson continued to post sexually explicit pictures of Plaintiff when he knew or was deliberately indifferent to the fact that she was a minor in them, whether such actions were sufficiently outrageous to support a claim of intentional infliction of emotional distress, and whether Erik's decision to register

---

[1] Plaintiff has also filed a motion for summary judgment. (Dkt. No. 60.) That motion is the subject of another order.

his adult websites under American Digicom was within the scope of the partnership agreement with his father Lee Peterson.

## I.   Background

This case concerns a series of nude and explicit photographs of the Plaintiff.[2]  The photos were allegedly taken in May 2007, four months before Plaintiff turned eighteen. (Defs.' Br. in Supp. Mot. for Summ. J. 1.)  Plaintiff took the photos at the request of M.G., her then-boyfriend who allegedly was in the Army and eighteen years old at the time.  (Sealed Ex. 2, Pl.'s Dep. 39-41, Apr. 9, 2010.)  Using a self-timer on her digital camera, Plaintiff took several sexually explicit photos of herself. (Defs.' Br. 1.)  She then uploaded the pictures to her father's computer, transmitted them to an online photo website, and sent them to her boyfriend over the internet via the social-networking site MySpace. (*Id.*)  Plaintiff claims that she immediately deleted or destroyed all copies of the photos after they were sent. (Pl.'s Resp. 3.)  Plaintiff intended the photos to remain private between her and her then-boyfriend. (*Id.*)

Sometime in December of 2008, Plaintiff was informed that the photographs were posted on a website called "Imagebeaver.com." (Defs.' Br. 1.)  Plaintiff contacted the website, told them she was sixteen years old in the pictures (in fact, she was seventeen), and demanded that they take them down. (*Id.*; Ex. G, Imagebeaver emails.)  A representative from Imagebeaver.com emailed Plaintiff back within two days and informed her that they had been taken down. (*Id.*)  Sometime around March 30, 2009, someone using the internet moniker "Creepy Pat" posted twelve photos of Plaintiff on the website "Submityourex.com." (*Id.* at 2.) Defendants have no connection with either of these

---

[2]  Pursuant to a protective order, Plaintiff is permitted to proceed anonymously and is referred to as Jane Doe in the case caption. (Dkt. No. 6.)

two websites.

In April of 2009, an unknown person sent nude photos of the Plaintiff to Defendant Erik Peterson's ("Erik") website "exgfpics.com."[3]  (*Id.*)  The website encourages men to submit nude photos of their "ex-girlfriends, ex-wives, current girlfriend or wife, or any female showing her stuff."  (Pl.'s Resp. 2.)   The website has a posted list of "submission rules."  (Pl.'s Resp. Ex. 7.)  One of these rules is that the "models" appearing in the pictures must be 18 years or older.  (*Id.*)  Erik admitted that he has no way of knowing whether people follow that rule, and that the only additional safeguard he has against posting pictures of minors is that he judges to see whether they could pass for 18. (Dkt. No. 60 Ex. 1, Dep. of Erik Peterson 143:7-9; 168:5-24, May 4, 2010.)  He further admitted that he does not comply with the record-keeping provisions of 18 U.S.C. § 2257, which require pornographic displayers to verify and record the age of the people appearing in their materials.  (*Id.* at 180:22-181:14.)  Another "rule" imposed by Defendants' site requests the person submitting the photo to provide a short description.  The rules go on to state that "I will make up a story if you do not include your own."  (*Id.*)  The pictures at issue in this case were accompanied by a narrative that Erik made up to describe them.

In May 2009, Plaintiff's sister informed her that people at her school were talking about the pictures of Plaintiff on "the ex-girlfriend website."  (Pl.'s Dep. 82:12-24.)  Upon seeing the images, Plaintiff called M.G. who told her he would figure out who posted the pictures.  (*Id.* at 83:8-22.)  M.G. informed Plaintiff that he was unable to discover who sent them, but had emailed the website telling them they needed to take the pictures down but they had not responded.  (*Id.*)  Over the next

---

[3] In 2001, Defendant Erik Peterson began supporting himself as a webmaster, running several adult and non-adult websites.  The other adult websites are very distasteful and their contents are discussed at greater length during Erik's deposition at pages 170-72.

couple of days, M.G. continued to update Plaintiff about the situation, informing her there still had been no response.

By mid-June, Plaintiff decided to take matters into her own hands and emailed "exgfpics.com" herself.  (Pl.'s Resp. 4.)  The only contact information available on the website was two email address "webmaster@exgfpics.com" and "admin@exgfpics.com."  On June 11, 2009, Plaintiff sent an email to the webmaster address.  (*Id.*; Ex. 12.)  After not hearing back, and because her pictures had not been removed, Plaintiff sent another email on June 13, 2009, this time to the admin address.  (*Id.*)  In the emails, Plaintiff informed the reader that the pictures were taken when she was a minor, that they had been submitted without her consent, and demanded that they be removed immediately.  (*Id.*)

Erik claims he never saw the emails; the pictures remained up on his website.  (Defs.' Br. 2-3.)  On August 14, 2009 Plaintiff's Complaint was served on Defendant Lee Peterson ("Lee"), Erik's father.  (Pl.'s Br. 14; Ex. 13.)  Three days later, on August 17, it was served on Erik.  (*Id.*)  The photos were taken down the next day, on August 18, 2009.  (Pl.'s Br. 14.)  Although Erik runs his adult websites alone, Lee was named as a defendant because in 2004 Erik and Lee formed a partnership, American Digicom, to sell 9/11 paraphernalia online.  (E.Peterson Dep. 72:22-73:10.)  Lee's participation in American Digicom is significant because American Digicom is the Registrant for exgfpics.com.[4]  (*Id.* at 125:15; Pl.'s Resp. Ex. 3.)  Erik originally registered exgfpics.com in his own name, but changed it in 2004 to American Digicom when he started moving into non-adult websites as well.  He did this so that when someone looked up one of his non-adult websites they

_____

[4] Since this lawsuit was instigated, Erik has removed American Digicom as Registrant of his adult websites.  (E. Peterson Dep. 124:1-7.)

would not see a connection to the pornographic sites.  (E. Peterson Dep. 62:20-63:6.)

Despite the fact that Erik named American Digicom as the Registrant for his adult websites, Lee allegedly has no further connection with them.  (Defs.' Br. 3.)  In fact, Lee alleges that he did not even know the name of his son's websites until he was served with Plaintiff's Complaint. (Defs.' Br. Ex. C, Deposition of Lee Peterson 22:3-4, May 4, 2010.)  All of the proceeds from Erik's adult websites go into one account, of which Erik is the sole signator.  (E. Peterson Dep. 93:11-16.)

Lee testified that he intended to form a partnership with his son to sell 9/11 shirts and that they created American Digicom to serve that end.  (L. Peterson Dep. 11-12.)  Erik handled all of the computer aspects of the company, including receiving orders and relaying them to Lee, while Lee was in charge of packaging and shipping orders.  (*Id.* at 12-13.)  Lee, however, admitted that he never instructed Erik that there were limitations on what he could do with American Digicom, and agreed that Erik was "free to do with American Digicom what he wishes."  (*Id.* at 12:25-13:9.)

When Lee was served with Plaintiff's Complaint on August 14, 2010, he called Erik to ask him what was going on.  (E. Peterson Dep. 236:13-15.)  Erik testified that although his dad explained to him what was in the Complaint, he was unable to take Plaintiff's pictures down that day because he was unable to identify what images needed to be removed based on his father's description.  (*Id.* at 236:20-23.)  When asked why he did not go over to his parent's house to read the Complaint, a twenty-minute car ride away, Erik stated that his father told him someone was coming to serve him with the Complaint later that day.  (*Id.* at 237:8-10.)  As a result, the pictures were not taken down until August 18, 2010, the day after Erik was served, following this Court's issuance of a TRO.  (*Id.* at 237:16-238:6.)

Plaintiff's Complaint alleges that Defendants violated 18 U.S.C. § 2252A(a)(2), which

5

prohibits anyone from knowingly receiving or distributing child pornography. Plaintiff brings her claim under 18 U.S.C. § 2252A(f) which provides that "[a]ny person aggrieved by reason of the conduct prohibited under subsection (a) or (b) or section 1466A may commence a civil action for the relief set forth in paragraph (2)." Paragraph (2) allows for recovery of injunctive relief, compensatory and punitive damages, as well as costs and reasonable fees for attorneys and expert witnesses. § 2252A(f)(2). Plaintiff also brings a number of state common law claims including: intrusion upon seclusion, public disclosure of private facts, intentional infliction of emotional distress, and negligence.

## II.    Standard of Review

Summary judgment is only appropriate if there are no genuine issues of material facts and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). When applying this standard, courts must view all materials, including all of the pleadings, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the responsibility of establishing no issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *Id.* at 324. The non-moving party must do more than show that there is some abstract doubt as to the material facts. It must present significant

6

probative evidence the issue exists in order to defeat a motion for summary judgment.  *See Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## III.    Discussion

### A.    Standing

Defendants claim that Plaintiff does not having standing to bring her claims under 18 U.S.C. §§ 2252A or 2255 of the Child Pornography Prevention Act of 1995 ( the "CPPA").  (Defs.' Br.5.)  Section 2252A(f) allows any party that is "aggrieved" by the creation or distribution of child pornography to bring a civil action in district court.  Section 2255 establishes a civil cause of action for "victims" of the creation or distribution of such material who suffered personal injury.  Essentially Defendants argue that because Plaintiff willingly took the pictures at issue she is not a "victim" of child pornography and therefore cannot bring a claim under the statutes.  (Defs.' Br. 8.)  Defendants emphasize that Plaintiff was "the sole producer and model, as well as the original voluntary transmittee of the images via the internet."  (*Id.*)

Defendants also argue that under the CPPA, there is a difference between children and minors who are mere months away from the age of majority and willingly produce the materials at issue themselves.  (*Id.* at 9 n.9.)  Defendants cite to *United States v. Corp*, 236 F.3d 325, 333 (6th Cir. 2001) in support of this proposition.  In *Corp*, the Sixth Circuit stated that "Corp was not alleged to be a pedophile nor was he alleged to have been illegally sexually involved with minors other than Sauntman, who was merely months away from reaching majority."  *Id.*  It went on to say, "[c]learly, Corp was not the typical offender feared by Congress that would become addicted to pornography and perpetuate the industry via interstate connections."  *Id.*

There are several problems with Defendants' reliance on *Corp*.  First, that decision held that

7

the CPPA was unconstitutional as applied to the defendant because his possession of child pornography did not have a sufficient nexus with interstate commerce. *Id.* That holding has since been overruled. *See United States v. Bowers*, 594 F.3d 522, 524 (6th Cir. 2010). Next, and more importantly, in *Corp* there were no allegations that the defendant attempted to distribute the photos in any way, or showed them to anyone else. *Id.* at 326. Not only did the minor depicted in the photos voluntarily pose *for the defendant*, but she also testified to the authorities that she was not a victim in any way and that the pictures were meant to be private between herself and the defendant. *Id.* at 326 n.5. Obviously, *Corp* is easily distinguishable from the instant case. Plaintiff did not consent to Defendants' possession or use of the photos, Plaintiff claims to have suffered severe emotional stress over the Defendants' publication, and unlike the defendant in *Corp*, the Defendants' website does risk "perpetuat[ing] the [child pornography] industry via interstate connections." *See id.* at 333.

The Plaintiff has sufficiently claimed that she has been aggrieved and victimized by Defendants' alleged violation of § 2252A. (Compl. ¶ 28.) She has alleged that her grades have suffered, she experiences severe stress and anxiety, her reputation has been ruined, and she has had to seek psychological treatment as a result. (Pl.'s Br. 19.) Accordingly, the Court DENIES Defendants' motion for summary judgment in this respect.

### B.    Are Plaintiff's Claims Barred By the Doctrine *In Pari Delicto*?

Defendants argue that all of Plaintiff's claims are barred by the equitable doctrine *in pari delicto*. (Defs.' Br. 10-11.) *In pari delicto* "bars a suit at law or equity where the party seeking relief is himself involved in the wrongdoing." *Schick v. Steiger*, 583 F. Supp. 841, 844 (E.D. Mich. 1984). The doctrine is only applied where the fault or guilt of the parties is approximately equal.

8

*Id.* Defendants claim that because Plaintiff violated 18 U.S.C. § 2252A by taking sexually explicit photos of herself as a minor and sending them over the internet, the Court should dismiss her claims because they derive from that wrongdoing. (Defs.' Br. 10-11.)

Although it seems clear that Plaintiff is guilty of violating federal laws prohibiting the production and distribution of child pornography, application of the doctrine *in pari delicto* in this case would be unwise. First, the doctrine only applies if the plaintiff is of equal or greater fault than the defendant. *Schick*, 583 F. Supp. at 844. Second, the United States Supreme Court has cautioned that it is improper to invoke "broad common-law barriers to relief where a private suit serves important public purposes." *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968), *overruled on other grounds by*, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771-72 (1984).

In *Perma Life*, the Supreme Court held that *in pari delicto* was not a defense to an antitrust claim. *Id.* at 139. The court noted that even though the plaintiff may be "no less morally reprehensible than the defendant," the Sherman Antitrust Act encouraged his action to promote the public policy of deterring anti-competitive practices. *Id.* The court was not persuaded by the defendant's argument that permitting a plaintiff to recover when he himself violated the Act would encourage continued violations, because such plaintiffs remain subject to the civil and criminal penalties of their own conduct. *Id.*

Finally, Plaintiff is a member of the class of persons 18 U.S.C. § 2252A was designed to protect – minors. *See Longstreth v. Gensel*, 423 Mich. 675, 698 (1985). In *Longstreth*, the Michigan Supreme Court held that the estate of a deceased minor, who died from crashing his own car after getting drunk at a wedding, could maintain a cause of action against the hosts of the

wedding under a Michigan statute prohibiting persons from furnishing liquor to minors. *Id.* The court stated "this underage guest can assert a cause of action for his own injuries, since he clearly falls within the class of persons which the statute intends to protect." *Id.* Defendants have not directed the Court's attention to any cases applying the *in pari delicto* defense to defeat claims brought by plaintiffs who fall within the class of persons a statute is trying to protect. Indeed, the vast majority of cases discussing this topic involve securities fraud or conspiracies. *See, e.g.*, *In re Dublin Sec., Inc.*, 133 F.3d 377, 380 (6th Cir. 1997).

In the instant case, the Court holds that *in pari delicto* does not bar Plaintiff's claims as a matter of law. Even though Plaintiff violated § 2252A, the CPPA is clearly an extensively detailed legislative scheme designed to police child pornography. One of the ways in which it discourages child pornographers is by permitting civil actions against them. § 2252A(f). As a result, this Court declines to use "broad common-law barriers to relief where a private suit serves important public purposes." *See Perma Life*, 392 U.S. at 138. Additionally, Plaintiff is a member of the class the CPPA was designed to protect. Finally, it is uncertain whether a jury would find Plaintiff equally culpable. The harm Plaintiff complains of is not the creation of the photos themselves, but rather their widespread dissemination on the internet without her consent. In this respect, it is not clear that Plaintiff is of greater or equal fault than Defendants. *See Schick*, 583 F. Supp. at 844. Accordingly, the Court DENIES Defendants' motion for summary judgment that Plaintiff's claims are barred by application of the doctrine *in pari delicto*.

### C.      18 U.S.C. § 2252A

Defendants contend they are entitled to summary judgment on Plaintiff's claims deriving from their alleged violation of 18 U.S.C. § 2252A. (Defs.' Br. 12.) Section 2252A(a)(2) prohibits

any person from knowingly receiving or distributing any child pornography that has traveled in interstate or foreign commerce. This scienter requirement extends both to the sexually explicit nature of the material and to the age of the performer. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Defendants argue that Plaintiff has not presented any evidence that Erik or Lee Peterson knowingly posted sexually explicit pictures of Plaintiff when she was a minor. (Defs.' Br. 12-13.) Although they do not dispute that Plaintiff sent exgfpics.com two emails in June 2009 or that the photos were not taken down until August 18, 2009, they argue that there is no evidence that Erik Peterson actually read the emails. (*Id.*) Defendants claim that Erik took down the pictures within twenty-four hours of being served with Plaintiff's Complaint, which he claims was the first time he had enough information to identify Plaintiff and remove her pictures. (*Id.*)

Plaintiff claims that she has demonstrated a genuine issue of material fact regarding whether Defendants knowingly violated the statute in three ways. First, she claims that Erik's failure to adhere to the record-keeping provisions of 18 U.S.C. § 2257, which require publishers of pornographic material to verify the age of models, should preclude him from defending himself by claiming he did not know how old she was. (Pl.'s Br. 10.) Next, Plaintiff contends that her June emails clearly stated that she was a minor, and that Defendants knowingly violated the statute during the months the pictures remained up on exgfpics.com. (*Id.*) Even if Defendants claim not to have read the emails, Plaintiff argues that this, coupled with Erik's total lack of any verification procedures, demonstrates that Defendants were "deliberately ignorant" of her age, which can satisfy the statute's "knowingly" requirement. (*Id.*) If nothing else, Plaintiff's pictures remained posted on the internet four days after Lee Peterson was served with the Complaint, and one day after Erik was served. Plaintiff argues that during that interim time period, Defendants undisputedly knew she

11

was a minor and therefore knowingly violated § 2252A. (*Id.*)

A statute requiring knowledge as an element can be satisfied if the defendant is deliberately ignorant as to the required information. *See, e.g.*, *United States v. Gullett*, 713 F.2d 1203, 1212 (6th Cir. 1983). Knowledge can be inferred from evidence that "the defendants acted with a reckless disregard for the truth or with a conscious purpose to avoid learning the truth." *Id.* (quotation marks omitted). In *Gullett*, the Sixth Circuit held that allowing the jury to infer knowledge from the defendants' deliberate indifference was proper. *Id.* The statute at issue in *Gullett* was 18 U.S.C. § 2314, which prohibits the knowing transport of stolen or fraudulently obtained securities in interstate or foreign commerce. *Id.*

Defendants argue that they cannot be found deliberately indifferent because there was no reason to suspect that Plaintiff was a minor from looking at the pictures. (Defs.' Br. 12.) Indeed, Plaintiff admitted that there was nothing in the picture to signal to the viewer she was a minor. (Pl.'s Dep. 46:14-22.) Defendants argue that because "[k]nowledge through deliberate indifference occurs where a party acts with an awareness of the high probability of the existence of the fact in question," and there was no reason to think Plaintiff was a minor they are entitled to summary judgment. *See Tilton v. Playboy Entm't Group, Inc.*, 554 F.3d 1371, 1378 (11th Cir. 2009) (quoting *United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006)).

In *Tilton*, the plaintiff sued various defendants for filming her participate in sexually-themed contests during Spring break while she was a minor, and then distributing the video. *Id.* The court rejected the plaintiff's argument that even if the defendant did not have actual knowledge of how old she was they violated section 2252A(a) because they were deliberately indifferent of her age. *Id.* The court agreed with the district court, which granted the defendant's motion for summary

12

judgment, that nothing in the pictures depicted anyone with the obvious appearance of a minor.  *Id.* The Eleventh Circuit affirmed the district court's, stating "[w]e cannot say that [the defendant] was aware of a high probability that Tilton was a minor when he observed Tilton, who was seventeen years and ten months old and looked like an adult, participate in sexually-themed contests where alcohol was served."  *Id.*

Although *Tilton* clearly supports Defendants' position, it is distinguishable from this case. Unlike the plaintiff in *Tilton*, Plaintiff repeatedly emailed exgfpics.com before filing this lawsuit with specific information requesting that her pictures be taken down and informing the recipient that she was a minor in them.  *See id.*  While the Court does not necessarily agree with Plaintiff that Defendants' failure to verify the age of the women depicted in the photos they post online establishes that they knew or should have known that any specific image portrays a minor as a matter of law, the Court does not believe that Defendants have shown that they did not violate the statute as a matter of law either.

A genuine issue of material fact exists as to whether Erik Peterson "acted with a reckless disregard for the truth or with a conscious purpose to avoid learning [Plaintiff's age]."  *Gullett*, 713 F.2d at 1212.  Erik admitted there he does nothing to verify the ages of the girls in the pictures he posts.  (Pl.'s Br. 16.)  It is also clear that Plaintiff sent two emails to the email addresses which were left as the only contacts for exgfpics.com.  (Pl.'s Br. Ex. 19.)  The site even specifically encouraged women to email the addresses if their pictures were on the site and they wanted them removed. (Pl.'s Br. 16.)  This alone is enough to preclude the Court from granting Defendants' motion. Accordingly, their motion is DENIED with respect to Plaintiff's § 2252A claim.

13

### D.    Public Disclosure of Private Facts

Plaintiff alleges that Defendants are guilty of publicly disclosing private facts about her. (Count III.)  To make out a claim for public disclosure of private facts, the plaintiff must demonstrate "the disclosure of information that would be highly offensive to a reasonable person and of no legitimate concern to the public, and the information disclosed must be of a private nature that excludes matters already of public record or otherwise open to the public eye."  *The Detroit News, Inc. v. Duran*, 200 Mich. App. 622, 631 (1993).  Defendants argue that they are entitled to summary judgment with respect to this issue because the images of Plaintiff had already been posted on at least one other website, Imagebeaver.com, and therefore were not private facts.  (Defs.' Br. 16.)

The Court agrees with Defendants.  While there is little caselaw directly on point, *Lee v. Penthouse International, LTD*, No. CV96-7069, 1997 WL 33384309 (C.D. Cal. Mar. 19, 1997) is. In *Lee*, Tommy and Pamela Anderson Lee sued Penthouse for publishing a series of photographs that the Lees had taken on their honeymoon, which depicted them in various stages of undress and engaging in sexual conduct.  *Id.*, at *1.  The pictures were allegedly stolen from the Lee's house. *Id.*  The *Penthouse* issue with the pictures was published in June 1996.  *Id.*, at *6.  The photos were first published, however, in a June 1995 issue of the French version of *Penthouse*.  *Id.*  They also appeared previously in the United States in an August 1995 issue of the magazine *Screw*.  *Id.*  The *Lee* court held that the plaintiffs could not maintain their action for public disclosure of private facts. *Id.*  It reasoned that "[b]ecause the photographs were previously published in three other magazines, they cannot form the basis for liability for public disclosure of private facts."  *Id.*

The court relied heavily on an earlier California state case, *Sipple v. Chronicle Publishing*

*Company*, 201 Cal. Rptr. 665, 669 (Cal. App. 1984). In *Sipple*, the *Los Angeles Times* wrote an article about Oliver Sipple, an ex-marine who prevented Sara Jane Moore from assassinating President Gerald Ford. *Id.* at 666-67. In the article, the *Times* referred to the fact that Sipple was a prominent member of San Francisco's gay community. *Id.* Sipple's family was previously unaware of his sexual orientation and disowned him. The California appellate court held that the *Times* could not be liable, in part, because it had merely republished a *San Francisco Chronicle* article on Sipple. *Id.* at 609. The *Sipple* court held that "a fact is no longer private even if it is only published in a newspaper or magazine of local or regional circulation." *Lee*, 1997 WL 33384309, at *6.

    As a result, the court in *Lee* rejected the plaintiffs' argument that the photos were not widely disseminated in the United States because *Screw* only had a limited circulation in the New York City area. *Id.* The *Lee* court held that "[a]ny publication in a newspaper or magazine, even one of limited circulation, places a private fact into the public domain." *Id.*

    Although *Sipple* and *Lee* are clearly not binding precedent on this Court, they are persuasive. Despite the fact that websites do not actually circulate in public like newspapers and magazines, their accessibility to anyone with access to the internet suggests that their contents should be treated as even more "widely disclosed" than information or photos portrayed in traditional print materials. *See Lee*, 1997 WL 33384309, at *6. Furthermore, *Lee* demonstrates that even fringe publications, like the regional *Screw* magazine, can render a private fact public. *See id.* Even if Imagebeaver.com is not a heavily trafficked site (and there is nothing in the record to suggest it is or is not), exgfpics.com did nothing more than republish photos already disclosed to the public. Plaintiff first became aware that the pictures were on Imagebeaver.com in December of 2008. (Defs.' Br. 1.)

15

Defendants did not post them on exgfpics.com until April 2009. (*Id.*) This scenario is very similar to the article in *Sipple* or the photographs in *Lee*. Accordingly, the Court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's public disclosure of private facts claim.

###    E.    Intrusion Upon Seclusion

Plaintiff also claims that Defendants' postings violated her right to privacy because they intruded upon her seclusion. (Count IV.) To establish an action for instruction upon seclusion, the plaintiff must demonstrate: "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man."[5] *Tobin v. Civil Serv. Comm'n*, 416 Mich. 661, 673-74 (1982); *Doe v. Mills*, 212 Mich. App. 73, 88 (1995). This violation of the right to privacy is analogous to trespass, however, "it is unnecessary to show physical invasion onto a person's property." *Duran*, 200 Mich. App. at 630. An action for intrusion focuses on the manner in which information is obtained, not its publication. *Mills*, 212 Mich. App. at 88. An action does not exist where "[t]he only aspect of the contemplated disclosure offensive to the plaintiffs is the fact of disclosure, not the method by which it was obtained." *Tobin*, 416 Mich. At 674.

In *Mills*, the plaintiffs were women who were patients at an abortion clinic. *Mills*, 212 Mich. App. at 77. They sued pro-life activists who picketed the abortion clinic using large signs with the plaintiffs' real names, indicating that they were about to have abortions, and imploring them not to "kill their babies." *Id.* The defendants learned the plaintiffs' names and the date they were going

---

[5] One Michigan appellate court has phrased the elements differently, finding that the plaintiff must prove: "(1) an intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, (3) by the use of a method that is objectionable to the reasonable person." *Duran*, 200 Mich. App. at 630.

to have the procedure from Robert Thomas, who climbed into a dumpster outside the abortion clinic and found their information.  *Id.* at 78.  Although Thomas was not a named defendant, the defendants admitted that they were aware Thomas had obtained the information from the garbage. *Id.*  One of the plaintiffs' claims alleged intrusion upon seclusion.  *Id.*

The *Mills* court affirmed the trial court's decision to grant the defendants' motion for summary disposition of the plaintiffs' intrusion claim.  *Id.* at 89.  The appellate court agreed with the trial court that summary judgment for defendants was proper because "the undisputed facts show that the search was conducted by Robert Thomas, a nonparty, and there was no evidence showing that either defendant was involved along with Thomas in obtaining the information from the garbage."  *Id.*

The court was not persuaded by the plaintiffs' claim that the defendants were culpable because they knew the information was obtained from a garbage dumpster outside the abortion clinic.  *Id.*  To rebut the plaintiffs' argument, the court relied heavily on *Pearson v. Dodd*, 410 F.2d 701 (D.C. Cir. 1969).  In *Pearson*, the plaintiff brought an intrusion claim against Pearson, who published the plaintiff's confidential files after he received them from two of the plaintiff's former employees, who removed them from his office.  *Id.* at 704.  The *Pearson* court held that Pearson was not liable for intrusion upon seclusion because he "only received copies of the documents knowing that they had been removed without authorization."  *Id.* at 705.  Although Pearson later published the information that was tortiously removed by the former employees, the court held that "injuries from intrusion and injuries from publication should be kept clearly separate."  *Id.*

This rationale is directly applicable to the instant case.  Like the defendants in *Mills* and *Pearson*, Defendants did not intrude into Plaintiff's privacy to obtain the pictures they later posted.

17

Instead, Defendants merely received images already obtained by non-parties to this case. *See Mills*, 212 Mich. App. at 89. Although Plaintiff points out that a jury could easily find that the manner in which Defendants obtained the pictures (by encouraging men to send in pictures of their ex-girlfriends and ex-wives) was offensive to the reasonable person (Pl.'s Br. 17), all that proves is that Defendants should have known there was a risk that the photos were submitted without the "model's" consent. Such knowledge is insufficient to impute any wrongdoing by the sender to Defendants. *See Pearson*, 410 F.2d at 705; *Mills*, 212 Mich. App. at 89. As a result, the Court also GRANTS Defendants' motion for summary judgment with respect to Plaintiff's intrusion upon seclusion claim.

### F.      Intentional Infliction of Emotional Distress

Next, Plaintiff claims that Defendants are guilty of intentional infliction of emotional distress ("IIED"). (Count V.) To establish an IIED claim, the plaintiff must prove: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Duran*, 200 Mich. App. at 629-30 (citing *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985)). "The trial court must determine as a matter of law whether the defendant's conduct was so extreme and outrageous to withstand a motion for summary disposition." *Id.* Liability will only be found when the defendant's conduct is so outrageous and extreme that it goes beyond all bounds of decency and is "to be regarded as atrocious and utterly intolerable in a civilized community." *Mills*, 212 Mich. App. at 91 (citing *Linebaugh v. Sheraton Mich. Corp.*, 198 Mich. App. 335, 342 (1993)). The conduct must make the average member of the community exclaim "Outrageous!" when described to her. *Id.*; *see also Roberts*, 422 Mich. at 603.

In *Mills*, the appellate court reversed the trial court's decision to grant the defendants

summary judgment on the plaintiffs' IIED claim.  212 Mich. App. at 93.  The court found that picketing an abortion clinic with posters that revealed clients' names and when they were planning on getting an abortion "involved more than mere insults, indignities, threats annoyances, or petty oppressions."  *Id.*

The Court DENIES Defendants' motion for summary judgment with respect to Plaintiff's IIED claim.  A reasonable jury could find that failing to take down Plaintiff's pictures after being notified in June that she was a minor in them was sufficiently extreme and outrageous conduct to support an IIED claim.

### G.     Is Lee Peterson a Proper Defendant?

Defendants have also moved to strike Lee Peterson as a defendant.  (Defs.' Br. 18.)  They admit that Lee formed a partnership with Erik and set up American Digicom, but claim that the partnership's sole purpose was allegedly to sell 9/11 paraphernalia.  (*Id.*)  Lee testified that he had no knowledge whatsoever that Erik had registered his adult websites under American Digicom.  (L. Peterson Dep. 22:3-4.)  Furthermore, Lee did not share in any of the profits of Erik's adult websites.  (E. Peterson Dep. 93:11-16.)  All of the proceeds from these sites go into one account, of which Erik is the sole signator.  (*Id.*)  Because he had no knowledge of the websites and did not share in their profits, Defendants argue that Plaintiff cannot demonstrate that Lee and Erik formed a partnership with respect to exgfpics.com under Illinois law.  (Defs.' Br. 19.)  As a result, Defendants argue Lee is not a properly named defendant.  (*Id.*)

Plaintiff on the other hand points to the clear evidence that Lee and Erik formed a partnership doing business as American Digicom.  (Pl.'s Resp. 19.)  American Digicom was also clearly the Registrant for exgfpics.com.  (*Id.*)  As a result, even if Lee did not have actual knowledge about the

website, Plaintiff contends he is liable for the actions of the partnership. (*Id.* at 19-20.)

Generally, partners are individually liable for torts committed by their firm or other partners when they are acting within the scope of its business whether they personally participate or not. *McIntyre v. Kavanaugh*, 342 U.S. 138, 139 (1916). This is true even if the defendant has no knowledge of his partner's wrongdoing. *See id.* at 140 (holding defendant personally liable even though other members of his firm engaged in fraud "without his authority, knowledge, or consent"). The main question is whether the violating partner's conduct is performed within the ordinary course of the partnership's business. *See Ross v. Ihrie*, No. 05-71420, 2006 WL 3446897, at *7 (E.D. Mich. Nov. 28, 2006) ("The act of every partner, who carries on the usual business of the partnership, binds the partnership – unless the partner has no authority to act in the particular matter, and the person with whom the partner is dealing is aware that the partner lacks authority."); *Martin v. Yeoham*, 410 S.W.3d 937, 951 (Mo. Ct. App. 1967) (stating the general rule and explaining that "[t]he test of the liability is based on a determination of the question whether the wrong was committed in behalf of and within the reasonable scope of the business of the partnership").

In the instant case, there is no question that Erik and Lee Peterson formed a partnership, doing business as American Digicom. (E. Peterson Dep. 72:22-73:10; L. Peterson Dep. 11-12.) As a result, Lee is individually liable for Erik's actions if affiliating American Digicom with exgfpics.com was within the scope of their partnership agreement. *See Ross*, 2006 WL 3446897, at *7; *Martin*, 410 S.W.3d at 951.

Although the purpose of forming American Digicom was allegedly to sell 9/11 t-shirts and Lee had no knowledge of Erik's adult websites and received none of their profits, the Court cannot say that Lee is not individually liable as a matter of law. A genuine issue of material fact exists

20

regarding the scope of Erik and Lee's partnership.  There was never a written agreement regarding

the formation or scope of American Digicom.  (L. Peterson Dep. 12:20-24.)  Lee testified that he

never instructed Erik that there were things he could not do with American Digicom.  (*Id.* at 12:25-

13:4.)  During Lee's deposition the following exchange regarding Lee's understanding of Erik's

authority and use of the American Digicom name occurred:

> Q.  So he's free to do with American Digicom what he wishes; is that
> correct?
>
> A.  Yeah, but I'm under the assumption he never did anything but sell
> T-shirts and this other stuff, I mean –
>
> Q.  Well, do you know that he runs adult websites?
>
> A.  Do I know it, yes.
>
> Q.  Okay.  When did you first find out?
>
> A.  Years ago when he told me he was quitting me, he wanted to do
> this.
>
> Q.  Okay.  And you – do you know one way or the other whether he's
> ever used American Digicom as part of that process?
>
> A.  Not to my knowledge.
>
> ***
>
> Q.  You're just saying you didn't have knowledge one way or the
> other?
>
> A.  Right, right.

(L. Peterson Dep. 13:5-14:6.)  This testimony precludes a finding that Lee Peterson is not personally

liable as a matter of law because a genuine issue of material fact exists regrading whether Erik's

decision to make American Digicom the Registrant for exgfpics.com was outside the scope of

American Digicom's ordinary business.  Accordingly, the Court DENIES Defendants' motion for

summary judgment with respect to the claims against Lee Peterson individually.

**IV.       Conclusion**

For the reasons stated above, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The Court grants Defendants' motion with respect to Plaintiff's intrusion upon seclusion and public disclosure of private facts claims, but denies the remaining claims.  Genuine issues of material fact exist as to whether Defendant Erik Peterson continued to post sexually explicit pictures of Plaintiff when he knew or was deliberately indifferent to the fact that she was a minor in them, whether such actions were sufficiently outrageous to support a claim of intentional infliction of emotional distress, and whether Erik's decision to register his adult websites under American Digicom was within the scope of the partnership agreement with his father Lee Peterson.

SO ORDERED.


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 24, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 24, 2011.


S/Denise Goodine
Case Manager